UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:18 CR CR 22 (VLB) |
| v. | : | |
| MARVIN SPRUILL | : | APRIL 5, 2020 |

### MOTION TO MODIFY AN IMPOSED SENTENCE OF IMPRISONMENT

The defendant, Marvin Spruill, respectfully requests the Court modify his sentence from fifty-seven (57) months imprisonment to fifty-seven (57) months of a combination of Home Confinement and incarceration. Mr. Spruill specifically requests the Court allow him to begin his fifty-seven (57) month sentence on April 8, 2020 and serve the balance of the sentence in a Bureau of Prison facility after the Court determines that the Covid-19 virus does not pose a health risk to inmates.  On August 8, 2019 Mr. Spruill entered a plea of guilty to conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(C) and 846.  On January 29, 2020, the Court imposed a sentence of, inter alia, fifty-seven (57) months imprisonment. ECF No. 754. Mr. Spruill was designated to Federal Correctional Institute Allenwood and ordered to self-surrender on April 8, 2020.  Mr. Spruill has requested his self-surrender be continued to July 8, 2020 in light of the health hazards currently present at jails nationwide.  Mr. Spruill now requests that in the alternative that he begin his sentence on April 8, 2020 as originally order but the Court modify the sentence it imposed to permit him to begin his sentence in Home Confinement.

Extraordinary events that could not have been foreseen at the time of sentencing have made his confinement physically dangerous. In recent months, COVID-19 has spread across the globe and throughout the United States. As of April 4, 2020, COVID-19 has sickened over 1.2 million people, leading to at least 70,028 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] President Trump has declared a national emergency. The CDC warned to take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[3]

Mr. Spruill would be detained in a densely populated prison, and thus would be particularly vulnerable to complications from COVID-19. The *New York Times* recently explained why jails are a much more dangerous place to be than even a cruise ship.[4] Jails and

---

[1] Coronavirus Map: Tracking the Global Outbreak, N.Y. TIMES (updated daily), https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (last visited Apr. 5, 2020).

[2] Press Release, World Health Organization, WHO Director-General's opening remarks at the media briefing on COVD-19 – 11 March 2020, (March 11, 2020), available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[3] People Who Are At Risk For Serious Illness From COVID-19, Ctrs. for Disease Control & Prevention (Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fpeople-at-higher-risk.html.

[4] See An Epicenter of the Pandemic Will Be Jails and Prison, If Inaction Continues, N.Y. TIMES (Mar. 16, 2020), available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html.

prisons are sites of disproportionate infectious disease rates.[5] Jails and prisons are sites of disproportionate infectious disease rates.[6] Incarcerated people have poorer health than the general population, and even in the best of times, medical care is limited in federal pretrial detention centers.[7]

On March 20, 2020, Judge Meyer granted an emergency motion for temporary release from Wyatt for a 62-year-old defendant awaiting sentencing. See United States v. Fellela, No. 3:19-CR-79-JAM, ECF No. 80 (D. Conn. Mar. 20, 2020) (Meyer, J.) In his order, Judge Meyer addressed the conditions of confinement at Wyatt:

> According to an inquiry through the U.S. Marshals Service of the Wyatt facility, there are more than 700 prisoners housed at Wyatt of which more than 500 prisoners are housed in two-person cells and more than 150 prisoners are housed in more-than-two-person cells. There are between 20 to 70 persons at one time in general dayroom areas, and up to 15 persons are allowed in the recreation area at one time. All levels of government nationwide have recently taken drastic measures in light of the COVID-19 pandemic to promote "social distancing" and to prohibit the congregation of large numbers of people with one another. But, as is true for most jails and prisons, the conditions of confinement at Wyatt are not compatible with these safeguards.

---

[5] Leonard S. Rubenstein, et al., HIV, Prisoners, and Human Rights, LANCET (July 14, 2016), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext.

[6] Leonard S. Rubenstein, et al., HIV, Prisoners, and Human Rights, LANCET (July 14, 2016), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext.

[7] Laura M. Maruschak, et al., Medical problems of State and Federal Prisoners and Jail Inmates, 2011-12, Bureau of Justice Statistics Special Report, NCJ 248391 (rev. Oct. 4, 2016), available at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

Id. at 2.  These concerns are equally applicable to Mr., Spruill.  Although the Bureau of Prisons have not yet reported any positive cases at FDI Allenwood, given the spread of the virus, it is only a matter of time.

Judges around the country have released defendants in light of the extraordinary risk posed by the COVD-19 pandemic.  See, e.g., United States v. Grobman, No. 18-cr-20989 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); United States v. Powell, No. 1:94-cr-316-ESH (D.D.C. Mar. 28, 2020) (granting motion for compassionate release in light of COVID-19 and finding it "would be futile" to require defendant to first exhaust in light of open misdemeanor case); United States v. Harris, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); United States v. Stephens, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic") (Nathan, J.); see also United States v. Avenatti, No. 8:19-cr-61 (C.D. Cal. Mar. 25, 2020) (sua sponte inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic").

On April 3, 2020, the Attorney General issued a memorandum to the Director of BOP, updating a new policy by the United States Department of Justice ("DOJ") to deal with

inmates in relation to the COVID-19 virus.  See Ex. A (Memorandum for Director of Bureau of Prisons: "Increasing Use of Home Confinement at Institutions Most Affected by Covid-19," Office of Attorney General, April 3, 2020).  This memorandum was issued "to ensure that [the BOP] utilize[s] home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody." Id. at 1.

COVID-19 provides compelling and extraordinary circumstances that support a modification of Mr. Spruill's sentence at this unique time in our country's history.  There is an urgent need to act now, before Mr. Spruill enters a BOP facility and greatly increase the likelihood, he becomes infected.

Reasons beyond medical illness, age, and family circumstances can qualify as "extraordinary and compelling reasons" for resentencing.  See U.S.S.G. § 1B1.13 n.1(A) (including a category for "Other Reasons," when there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").  And with the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons."

WHEREFORE, Mr. Spruill requests his sentence be modified to a sentence of Home Confinement until the Court determines that BOP facilities are safe from effects of Covid-19.

Government's counsel, Assistant U. S. Attorney Patrick Caruso, objects to this motion.

Respectfully submitted,

THE DEFENDANT,
MARVIN SPRUILL

BY /s/ Michael Dolan
   Michael Dolan
   1337 Dixwell Avenue
   Hamden, CT  06514
   (203) 230-1678
   Federal Bar No.:  ct18220

CERTIFICATION OF SERVICE

I hereby certify that on this 5th day of April 2020 a copy of the foregoing was filed electronically via the Court's CM/ECF system, and by that system, counsel for the Government has been provided with a copy of the foregoing.

/s/ Michael Dolan
Michael Dolan