**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 3:18-cr-0022-10(VLB)** |
| | : | |
| **MARVIN SPRUILL** | : | |
| **Defendant.** | : | **May 4, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OF DECISION DENYING DEFENDANT MARVIN SPRUILL'S**
**MOTION FOR A REDUCTION OF SENTENCE**

Before the Court is Defendant Marvin Spruill's Motion for a Modification of Sentence for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. [Dkt. 794]. For reasons set forth below, the Court DENIES Defendant's motion.

**Background**

On January 29, 2020, the Court sentenced Mr. Spruill to 57 months of incarceration following Defendant's guilty plea to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute, Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Mr. Spruill was one of nineteen defendants arrested following an FBI investigation into a crack cocaine trafficking operation in a residential area in New Haven, Connecticut. [Dkt. 723 (Pre-Sentence Report) ¶¶

1

15-29] (hereinafter the "PSR").[1] Judicially authorized wiretaps recorded Mr. Spruill engage in five separate drug transactions. [PSR ¶¶ 16-29]. Mr. Spruill's unlawful activities resulted in an attributed drug quantity of between 28 and 112 grams of crack cocaine. [PSR ¶¶ 6-9]. The parties, the probation office, and the Court all agreed on the Defendant's guideline calculation: an adjusted offense level of 21 and a Criminal History Category of IV, rendering an advisory guideline sentence range of 57-71 months. [01/29/2020 (Sentencing hearing) at 13:18:00-13:19:43].

As addressed at sentencing, the Court noted that the Defendant has a history of violent conduct towards women and several protective orders were issued over a period of three years to protect the mother of his child. [*Id.* at 13:40:48-13:41:07]. Defendant has prior convictions for assault in the first degree, sale of hallucinogenics, and breach of peace. [*Id.* at 13:41:16-13:41:30]; [PSR ¶¶ 48-50]. His longest sentence was eight years' incarceration, execution suspended after three years' incarceration. [*Id.* at 13:41:33-13:42:17]. Defendant, then age 27, had no significant medical conditions other than nerve damage caused by a domestic violence-related stabbing, resulting in some functional limitations. [PSR ¶ 60].

The Court found no basis for an upward or downward departure. [01/29/2020 Sentencing hearing) at 13:48:27-13:49:20]. The Court determined that a sentence at the bottom of the advisory guideline range was sufficient, but not greater than necessary, to fulfill the purposes of sentencing. [*Id.* at 13:49:22-13:50:00]. At the

---

[1] At sentencing, the Court confirmed that Defendant read the presentence report ("PSR"). Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [01/29/2020 (Sentencing hearing) at 13:18:00-13:19:43]

conclusion of sentencing, the Court initially set a self-surrender date of March 18, 2020. [*Id.* at 13:55:23-13:55:31]. However, the Court granted Defendant's request to extend his self-surrender date until April 8, 2020 to accommodate family obligations. [*Id.* at 13:57:20-13:57:50].

After the Court imposed the sentence, it allowed Mr. Spruill to remain at liberty and self-surrender to the designated Bureau of Prison facility on the specified date, subject to the pre-trial conditions of release. The conditions included abiding by federal, state and local law. While he was awaiting a designation to a Bureau of Prison facility, Mr. Spruill was arrested by the New Haven Police Department and charged with Assault 3rd Degree and Breach of Peace 2nd Degree on March 8, 2020.  [Dkt. 781 (Prob. Petition for Action)]. As a consequence, the Connecticut Superior Court issued a protective order. *Id.*  This Court issued a corresponding arrest warrant and detainer. *Ibid.*

Then, on April 5, 2020, Defendant moved to continue his self-surrender date from the previously extended date of April 8, 2020 until July 22, 2020 because of an asserted generalized risk of contracting COVID-19 in a custodial setting. [Dkt. 790]. The Government consented to Defendant's motion. [*Ibid.*]. The next day, which was two days before the self-surrender date, Defendant moved to modify his sentence for compassionate release to permit him to begin his sentence with a period of home confinement. [Dkt 791].

The Court denied Defendant's requested extension of the self-surrender date because the Defendant's post-sentencing arrest necessitated the issuance of a

Petition for Action by the probation office, the Defendant does not have any medical conditions rendering him especially vulnerable to COVID-19, and there were no confirmed inmate COVID-19 cases at the Defendant's designated facility. [Dkt. 794 (Order denying Def. mot. to cont. self-surrender)]. The Court also noted that, while the Government consented to the motion, there was no indication that the Government would have consented to the motion had they also known that the Defendant was seeking resentencing to allow the initial portion of his sentence to be served on home confinement. *Ibid.*

A review of the Bureau of Prison's ("BOP") Inmate Locator shows that Mr. Spruill was designated to Federal Correctional Institution Allenwood (Medium). *See* Fed. Bureau of Prisons, *Inmate Locator Service, BOP Registration no. 25725-014*, https://www.bop.gov/inmateloc/. *See Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search).

At present, no inmates have tested positive for COVID-19 at Mr. Spruill's facility. *See* Fed. Bureau of Prisons, *BOP COVID-19 Cases* (Table), https://www.bop.gov/coronavirus/index.jsp, (last updated 05/03/2020).

<u>Legal Standard</u>

Addressing the specific provision under which Defendant seeks release, the First Step Act of 2018 amended the procedural requirements for bringing a motion to reduce sentence to provide compassionate release. 18 U.S.C. § 3582(c)(1)(A). This amendment allows a defendant to move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid.*; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. 1B1.13(2). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Ibid.*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As other courts have recognized, the U.S. Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *Ebbers*, 2020 WL 91399, at *4. The

5

Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition

may constitute "extraordinary and compelling" circumstances when:

(A) Medical Condition of the Defendant.--
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.> [or]
    (ii) The defendant is--
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A).   Commentary Application

Note 1(D) contains a residual clause to provide relief for other "extraordinary and

compelling reasons" as determined by the Director of the Bureau of Prisons. Each

of the conditions listed in the application note are debilitating and render an inmate

unlikely to recidivate. The Defendant bears the burden of showing that he is entitled

to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.

<u>Legal Analysis</u>

       The Court must first address the timing of Defendant's motion. Defendant's

motion seeks re-sentencing because he moved for modification of his sentence

before he reported to the Bureau of Prisons. Sentencing means the oral

announcement of the sentence.  Fed. R. Crim. P. 35(c). Generally, a court cannot

modify a sentence once it is announced. 18 U.S.C. § 3582(c). "Within 14 days after

sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).  Mr. Spruill is a sentenced inmate and he does not seek resentencing on any basis permitted by Fed. R. Crim. P. 35. *See also*, *United States v. Abreu-Cabrera*, 64 F.3d 67, 69 (2d Cir. 1995)("The very language of the Rule [35], we think, makes clear that a sentencing court is not authorized to change its mind as the winds change, veering away in a trice from a sentence it has correctly imposed, simply because further reflection has caused it to have a change of heart.").

Instead, he relies on the Court's statutory authority to release him for compassionate reasons. Compassionate release is a statutory exception to the prohibition against resentencing contained in 18 U.S.C. § 3582(c). As presented here, Defendant's motion seeks re-sentencing because he moved for modification of his sentence before he reported to the Bureau of Prisons. The Court concludes that Defendant's motion is premature.

Still, had the motion been filed after Mr. Spruill began his custodial sentence, the motion would still fail on the merits because he failed to exhaust administrative remedies and has not demonstrated "extraordinary and compelling" reasons for his release. Additionally, a sentence of home confinement would not reflect the seriousness of the Defendant's conduct, deter him from future crimes, or protect the public, as was the case when this Court, and the courts in cases cited by Mr. Spruill, exercised their authority to release an inmate from custody on the basis of compassionate release.

Finally, the dire predictions on which Mr. Spruill relies are not the product of scholarly rigor or empirical data. These predictions have not come to fruition. To date, 38 inmates out of a non-reduced population of 152,650 or .02 % (i.e. 2:10,000) of the population held in Bureau of Prison managed facilities or community-based facilities have died. *See* **Fed. Bureau of Prisons,** *BOP COVID-19 Cases (Table)*, **https://www.bop.gov/coronavirus/index.jsp,** (last updated 05/03/2020). By comparison, the state of Connecticut has had 2,495 deaths. Conn. Dep't. of Pub. Health, *Coronavirus Disease 2019 (COVID-19)*, **https://portal.ct.gov/coronavirus** (last updated on 05/03/2020). Consequently, Connecticut's mortality rate is nearly double the BOP's by population. (Calculated using Conn. Dep't. Pub. Health, *Annual Town and County Population for Connecticut-2018*, **https://portal.ct.gov/DPH/Health-Information-Systems--Reporting/Population/Annual-Town-and-County-Population-for-Connecticut**).[2] The BOP also reports that 515 inmates have recovered. *See BOP COVID-19 Cases (Table).*

I.    **Administrative exhaustion**

First, the plain and unambiguous language of 18 U.S.C. § 3582(c)(1)(A) requires that a defendant must first seek administrative relief, and then may only proceed to court after fully exhausting administrative appeals or the lapse of 30 days from the warden's receipt of the request, whichever is earlier. Here, Defendant

---

[2] The Court recognizes that these statistics are imperfect as reporting methodologies among different government agencies vary. They are cited for illustrative purposes to show that inmates in BOP custody as a whole have fared better than the residents of this District.

failed to address the statutory administrative exhaustion requirement. Defendant's motion is therefore denied on that basis. See *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020); see also *United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *3 (S.D.N.Y. Apr. 6, 2020) and *United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *4 (S.D.N.Y. Apr. 6, 2020) (addressing the requirement of exhaustion of administrative remedies and differences in opinion among district courts in this Circuit concerning waiver).

II.    <u>Whether "extraordinary and compelling" reasons exist</u>

Had Defendant satisfied the statutory administrative exhaustion requirement, the Defendant's motion would fail on the merits as Defendant did not demonstrate "extraordinary and compelling" reasons for his release.

This Court recognizes that "extraordinary and compelling" circumstances may exist outside of those circumstances delineated by the U.S. Sentencing Commission, given the advisory nature of the guidelines, *United States v. Booker*, 543 U.S. 220 (2005), and their conflict with the statutory language of the First Step Act amendments. *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *4 (D. Conn. Apr. 1, 2020). The guidelines are nevertheless helpful in defining the vague standard because the First Step Act did not amend the substantive standard. *Ebbers*, 2020 WL 91399, at *4.

Here, Defendant does not suggest that he has any medical condition that predisposes him to the risk of severe complications or death should he contract COVID-19. As addressed by the Court at sentencing, aside from his injured hand,

he is otherwise healthy; he is now twenty-eight years old. [PSR ¶ 60]. Instead, Defendant argues generally that the heightened risk of infection from COVID-19 by virtue of his custody constitutes "extraordinary and compelling" reasons under the residual clause of the sentencing guidelines, U.S.S.G. 1B1.13, Commentary Application Note 1(D). [Dkt. 794 (Def. Mot. to Reduce Sent.) at 5]. The Court disagrees.

None of the cases cited by Defendant stand for the proposition that risk of contracting COVID-19 while in custody generally constitutes "extraordinary and compelling," reasons absent some individualized medical risk factor. Other cases are applying a different standard because the defendant is on bond awaiting trial or sentencing and not an incarcerated offender.[3]

Here, based on the Defendant's characteristics, he is not at an appreciably greater risk of severe complications should he contract COVID-19. On the contrary,

---

[3]*United States v. Grobman,* No. 18-cr-20989, Dkt. 397 (S.D. Fla. Mar. 29, 2020)(…[t]his Order arises from one defendant's individual medical condition, it should not be viewed as a determination that FDC is unable to adequately provide medical screening or treatment to its detainees, that detention at FDC is generally unsafe, or that detention there is generally inappropriate or unduly risky"); *United States v. Powell*, No. 1:94-cr-316-ESH, Dkt. 98 at 1 (D.D.C. Mar. 28, 2020) (defendant is 55-years-old, suffers from several respiratory problems…and has only 3 months remaining on his 262-month sentence); *United States v. Harris*, No. 19-cr-356, Dkt. 36 (D.D.C. Mar. 26, 2020) (pre-trial detention); *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155, at *1 (S.D.N.Y. Mar. 19, 2020)(same); *United States. v. Avenatti*, No. SACR 19-61-JVS, 2020 WL 1482552, at *1 (C.D. Cal. Mar. 25, 2020) (same). *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020)(same, noting too that defendant is obese, diabetic, and in the highest risk group of death if he becomes infected);

he is young and healthy; his is the antithesis of the profile of a person at heightened risk of complications or death due to contracting COVID-19.

Nor has the Defendant shown that he is in fact at greater risk.   As noted above, he relies on unsupported predictions which are disproved as of this date by actual data. Defendant has not shown that the BOP has been unable to contain the virus at his facility or would be unable to treat infected inmates. *Gileno*, 2020 WL 1307108, at *4. This is especially true given Defendant's youth, overall good health, and the absence of any confirmed inmate cases at FCI Allenwood (Medium).

Accordingly, the Court finds that there are no "extraordinary and compelling" reasons to modify Mr. Spruill's sentence.

III.    3553(a) sentencing factors

In addition to the Court's findings that Mr. Spruill failed to satisfy the administrative exhaustion requirement and failed to show "extraordinary and compelling" reasons to modify his sentence, his motion also fails when the Court considers the relevant sentencing factors. 18 U.S.C. § 3553(a).

A sentence of time served would not foster respect for the law, protect the public, or deter Mr. Spruill from future criminal conduct. § 3553(a)(2)(A)-(C). The sentence reflected Mr. Spruill's continued choice to engage in criminal conduct and the resultant harm caused to the community. Virtually the entire 57-month sentence remains unserved.

Moreover, Mr. Spruill's arrest for a violent offense *after* the Court granted an extension of the self-surrender date demonstrates continued disrespect for the law, a lack of specific deterrence, and continued risk of danger to the public.

### Conclusion

For the reasons stated above, the Court DENIES Defendant's Motion for a Reduction of Sentence.

                IT IS SO ORDERED.

                _____/s/_____

                Hon. Vanessa L. Bryant
                United States District Judge

Dated this day in Hartford, Connecticut: May 4, 2020